E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
KYLE W. KAHAN (Cal. Bar No. 298848)
Assistant United States Attorney
International Narcotics, Money Laundering
and Racketeering Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2238
    Facsimile: (213) 894-0141
    E-mail:   kyle.kahan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 2:21-586(A)-JFW-1 |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION REGARDING DEFENDANT MICHALEA LATISE BARKSDALE AND OBJECTIONS TO THE PRESENTENCE REPORT; EXHIBITS; DECLARATION OF KYLE W. KAHAN |
| v. | |
| MICHALEA LATISE BARKSDALE, | |
| Defendant. | Hearing Date: August 7, 2023<br>Hearing Time: 8:00 a.m.<br>Location:   Courtroom of the<br>                 Hon. John F. Walter |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Kyle W. Kahan, hereby files its Sentencing Position and Objections to the Presentence Report.

///

///

This Sentencing Position and Objections are based upon the attached memorandum of points and authorities, exhibits, the declaration of Kyle W. Kahan, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: July 17, 2023        Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

/s/ Kyle W. Kahan
KYLE W. KAHAN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant is a thief who used other people's identities to steal money for years. For approximately six years, defendant engaged in a scheme with Toya Toshell Hunter, a friend who happened to be a United States Postal Service ("USPS") mail carrier, to defraud multiple financial institutions and exploit Hunter's position as a mail carrier to steal access devices and sensitive information. In this scheme, the two conspired to steal California Employment Development Department (EDD) cards, Economic Impact Payment (EIP) cards, and personal identifying information ("PII"). All of this was done to enrich themselves at the expense of the public and destitute. The cards Barksdale and Hunter stole were designated for people at their low points, namely, those that were unemployed or struggling through the COVID-19 pandemic. Rather than reflecting on the callousness of her actions at any point during her crimes, defendant selfishly pressed on and continued to steal.

The theft was not the end of the scheme. Defendant would use the stolen PII to activate the EDD and EIP cards and use them to fraudulently withdraw cash from various ATMs. In total, based on her fraudulent withdrawals, defendant stole approximately $274,738.53 from Bank of America and Fiserv, the parent financial institutions of the EDD and EIP cards, respectively. Defendant's own apartment served as a hub for the stolen access devices and other means of fraud, including stolen mail, notebooks containing hundreds of victims PII, and digital devices containing photographs of driver's licenses and links to EDD account portals.

On August 19, 2022, defendant was charged in a first-superseding indictment with the following: (1) Bank Fraud, in violation of 18 U.S.C. § 1344(2); (2) Access Device Fraud in Excess of $1,000, in violation of 18 U.S.C. § 1029(a)(5); (3) Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1); (4) Possession of 15 or More Unauthorized Access Devices, in violation of 18 U.S.C. § 1029(a)(3); and (5) Possession of Stolen Mail, in violation of 18 U.S.C. § 1709. (Dkt. 30.)  On March 6, 2023, defendant pled guilty to one count of Bank Fraud and one count of Possession of 15 or More Unauthorized Access Devices.  (Dkts. 62 ("Plea Agreement"), 64.)

## II. PSR GUIDELINES CALCULATIONS AND OBJECTIONS

On May 30, 2023, the USPO filed its Presentence Investigation Report ("PSR").  (Dkt. 82.)  In the PSR, the USPO calculated defendant's adjusted offense level as 23 pursuant to the following calculation:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Loss Greater Than $550,000 But Less Than $1,500,000 | +14 | U.S.S.G. § 2B1.1(b)(1)(H) |
| More Than 10 Victims | +2 | U.S.S.G. § 2B1.1(b)(2)(A) |

(See PSR ¶¶ 35-53.)

After a three-point downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(b), the USPO calculated defendant's total offense level as 20.  (PSR ¶¶ 55-57.)  The USPO properly determined defendant was in Criminal History Category I. (PSR ¶ 64.)  The USPO's calculations resulted in a United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range of 33-41 months and a term of supervised release of up to five years.  (PSR ¶¶ 100, 103-104.)  On the same date, the USPO issued its

Recommendation Letter ("USPO Rec.") and recommended defendant be sentenced to a below-Guidelines 24-month term of imprisonment, a three-year period of supervised release, special assessments totaling $200, and restitution totaling $646,735.56. (Dkt. 81.)

Consistent with the parties' plea agreement, the government agrees that the base offense level is seven and that a two-level enhancement applies for the scheme involving more than ten victims. The government however objects to the USPO's calculations of total loss and restitution. Pursuant to this Court's June 21, 2023 order, lead counsel for the government and defendant met and conferred regarding the intended and actual loss calculations. Based on this meet and confer, the parties agreed to losses that differed from USPO's calculations. This difference was based on revised calculations of records provided by Fiserv regarding the usage of EIP cards and mail found in defendant's apartment. The parties agree that these revised calculations more accurately capture defendant's conduct and what she could do with the recovered contraband. Specifically, the parties contend that the intended losses totaled $274,738.53 and the actual losses and restitution totaled $253,041.53. (See Dkt. 87.)

Accordingly, the parties believe that defendant's total offense level should be 18 pursuant to the following calculation and a three-point downward adjustment for acceptance of responsibility:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Loss Greater Than $250,000 But Less Than $550,000 | +12 | U.S.S.G. § 2B1.1(b)(1)(H) |
| More Than 10 Victims | +2 | U.S.S.G. § 2B1.1(b)(2)(A) |

3

With these revised calculations, defendant's resulting Guidelines range would be 27-33 months.  Defendant is barred from asking for a term of imprisonment below 24 months.  (Plea Agreement ¶ 2(l).)  Defendant's conduct was extensive, invasive, and inexcusable.  It preyed on people in dire need of funds and exploited their PII to further the scheme.  Based on this and the revised calculations, the government recommends the following sentence: (1) a 27-month term of imprisonment; (2) a three-year period of supervised release with a suspicion-less search condition; (3) restitution to Bank of America totaling $215,641.53; (4) restitution to Fiserv totaling $37,400; and (5) special assessments totaling $200.[1]

**III. STATEMENT OF FACTS**

Beginning no later than December 13, 2014, defendant engaged in a prolonged, fraudulent scheme where she would steal PII, use it to activate EDD and EIP cards, and use the cards for illicit ATM withdrawals.  (PSR ¶¶ 17-18.)  For years, defendant continued to unjustly enrich herself through fraud, deceit, and thievery --- all at the expense of the unemployed and those struggling during the COVID-19 pandemic.  (Id.)

To start this scheme, defendant needed both the access devices and the means to activate them.  To accomplish this, defendant used Toya Toshell Hunter, a USPS mail carrier and friend, to further the scheme.  (Id. ¶ 18.)[2]  Abusing her role as a mail carrier, Hunter stole EDD and EIP cards and PII from her mail route.  (Id.)  Hunter

---

[1] The government will file concurrent with this memorandum an applications for a proposed money judgment order and property forfeiture order based on agreed-upon forfeited property.

[2] On April 24, 2023, this Court sentenced Hunter to a 15-month term of imprisonment.

4

would then provide the stolen cards to defendant and the two would exchange the stolen PII over text and Snapchat, a digital messaging application. (Id. ¶¶ 18-19.) Defendant would call the EDD and EIP card activation hotlines and use the stolen PII to activate the cards, including one belonging to victim M.V.. (Id. ¶¶ 20-21). This included at least 125 EDD victim accounts. (Id. ¶ 22). Defendant would pay Hunter with cash as part of this scheme. (Id. ¶ 23.)

At some point, defendant began to operate this scheme from her home. (Id. ¶ 24.) Defendant would store EIP and EDD cards, stolen mail, and multiple notepads containing hundreds of social security numbers. (Id. ¶ 25.) The stolen mail included a significant number of envelopes related to EDD and EIP cards. See Exhibit A, Dec. 1, 2021 Photographs of Recovered Mail, Cards, and Journals. Defendant also had multiple digital devices in her apartment, including cell phones and laptops, that were either used to communicate and exchange PII with Hunter, or that had bookmarked links to EDD portals. See Exhibit B, United States Postal Inspection Service ("USPIS") Memorandum of Activity, Mar. 16, 2022 - Apr. 20, 2022. The same cell phone defendant used to communicate with Hunter contained numerous searches, bookmarks, and images related to exploiting stolen PII and other fraudulent behavior. See Exhibit C, USPIS Report of Activity, Nov. 15, 2022. Defendant's years-long fraudulent scheme resulted in losses of at least $270,000 to financial institutions that oversaw the distribution and management of access devices intended to provide a monetary lifeline to vulnerable. (Dkt. 87 at 3.)

**IV. A 27-MONTH TERM OF IMPRISONMENT IS APPROPRIATE**

For the reasons set forth below, the government respectfully recommends the following sentence: (1) a term of imprisonment of 27

months; (2) a three-year period of supervised release with a suspicion-less search condition; (3) restitution to Bank of America totaling $215,641.53; (4) restitution to Fiserv totaling $37,400; and (5) special assessments totaling $200. The government believes such a sentence appropriately balances the history and characteristics of the defendant with the need to reflect the seriousness of the offense, to protect the public, to deter defendant from further criminal acts, and to promote respect for the law.

**A.  Nature and Circumstances of the Offense**

The nature and circumstances of defendant's offense support a sentence of 27 months' imprisonment. See 18 U.S.C. § 3553(a)(1). Defendant's conduct prevented victims from receiving necessary unemployment benefits and funds to stave off the impact of the then-ongoing COVID-19 pandemic. Defendant's scheme was lengthy, involved the opening of sealed and private mail and correspondence, and required the use of stolen PII to succeed. Given the sheer length and scope of defendant's conduct, a 27-month term of imprisonment is more than appropriate.

**B.  History and Characteristics of the Defendant**

Defendant's history and characteristics support a 27-month sentence. While the government acknowledges the financial difficulties one must go through as a single-mother, defendant simply has no excuse for her conduct. Defendant was gainfully employed throughout the majority of the scheme and apparently earned enough --- be it through her employment or from the scheme --- to purchase a 2019 Lexus and products from Louis Vuitton. (PSR ¶¶ 89-92; Ex. A at 16.) Moreover, defendant's anxiousness at her pending sentence is because of her actions and hers alone. Every time she conspired with

6

1 and paid off Hunter, jotted down and used PII to activate cards, and
2 unlawfully withdrew over cash from ATMs, she risked not just her own
3 liberty, but the ability for her to take care of her only child.
4 Defendant disregarded this risk, continued to steal, and jeopardized
5 the welfare of those she victimized, namely, the unemployed and
6 COVID-impacted.  A 27-month sentence appropriately captures the
7 gravity of defendant's behavior given her background and the choices
8 she made in spite of what she stood to lose.

**C.  Need to Reflect Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Afford Deterrence, and Protect the Public**

11 The sentence must satisfy defendant's need for punishment or
12 rehabilitation, as well as society's need to reflect the seriousness
13 of the offense, promote respect for the law, provide just punishment
14 for the offense, afford adequate deterrence, and protect the public.
15 There is a strong need for the sentence to specifically deter
16 defendant from committing future crimes and generally deter others
17 from committing similar crimes.  See 18 U.S.C. § 3553(a)(2)(B).
18 Under the circumstances, a 27-month sentence will impress upon
19 defendant the seriousness of her crimes, give her time to consider
20 the consequences of her actions, reflect on her choices, and
21 recognize what she has lost during her incarceration.  While
22 appropriate, such a sentence would be significantly lower than the
23 time defendant spent defrauding and stealing the identities of the
24 unemployed and those struggling through an unprecedented health
25 crisis, i.e., over six years.  Nevertheless, the government
26 appreciates not just defendant's remorse for her conduct, but also
27 her acknowledgment of the impact of her conduct on the victims in
28

7

this case.  (PSR ¶ 30.)  The government believes a 27-month sentence would be just given the totality of events before this Court.

### D. A Suspicion-less Search Condition Should be Imposed as a Term of Supervised Release Based on Defendant's Conduct and Post-Indictment Behavior

Because the defendant's conduct involved a lengthy and significant amount of theft from the vulnerable, the government believes that she should be subject to a suspicion-less search condition as part of the terms and conditions of her supervised release.  Such a condition would provide an adequate deterrent against any recidivism and protect the public should defendant engage in any additional criminal activity while under supervision.

## V. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court impose the government's recommended sentence.

**DECLARATION OF KYLE W. KAHAN**

I, Kyle W. Kahan, declare as follows:

1. I am an Assistant United States Attorney in the United States Attorney's Office for the Central District of California. I represent the government in this case. I have knowledge of the facts set forth herein and could and would testify to those facts fully and truthfully if called and sworn as a witness.

2. Attached as **Exhibit A** is a true and correct copy of photographs taken on December 1, 2021 at defendant's apartment.

3. Attached as **Exhibit B** is a true and correct copy of a USPIS Memorandum of Activity from March 16 to April 20, 2022.

4. Attached as **Exhibit C** is a true and correct copy of a USPIS Report of Activity from November 15, 2022.

5. Due to the presence of PII in **Exhibits A** through **C**, the government will file an <u>ex parte</u> application to seal the exhibits. I conferred with defense counsel on this pending request. Defense counsel does not object.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on July 17, 2023.

*Kyle Kahan*
_____
KYLE W. KAHAN
Declarant

9